OPINION
{¶ 1} Defendant-appellant Rashawn I. Thomas appeals the September 25, 2003 Judgment Entry of the Ashland County Court of Common Pleas declaring him a sexual predator pursuant to R.C. 2950. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
{¶ 2} On March 30, 1994, appellant plead guilty to one count of aggravated burglary, and one count of rape. On April 19, 1994, the trial court sentenced appellant on each count. On July 14, 2003, the State filed a motion to have appellant declared a sexual predator pursuant to R.C. 2950. The trial court held a hearing on the motion on September 22, 2003. On September 25, 2003, via Judgment Entry, the court declared appellant to be a sexual predator.
{¶ 3} It is from this September 25, 2003 Judgment Entry appellant prosecutes his appeal raising the following assignment or error:
{¶ 4} "I. The trial court's decision finding the defendant to be a sexual predator was not supported by clear and convincing evidence in the record and was against the manifest weight of the evidence."
 I
{¶ 5} Appellant maintains the trial court's finding him to be a sexual predator is not supported by clear and convincing evidence and is against the manifest weight of the evidence. Specifically, appellant argues the witnesses and evidence presented at the sexual predator hearing on September 22, 2003, indicate no other sexual misconduct or charges of violence or sexual behavior by appellant.
{¶ 6} The trial court declared appellant a sexual predator pursuant to R.C. 2950.01. The statute defines "sexual predator" as:
{¶ 7} "(E) "Sexual predator" means a person to whom either of the following applies:
{¶ 8} "(1) The person has been convicted of or pleaded guilty to committing a sexually oriented offense that is not a registration-exempt sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses.
{¶ 9} Pursuant to the above, prior to declaring appellant to be a sexual predator, the trial court was required to find appellant had been convicted of or pleaded guilty to committing a sexually oriented offense, and, second, he was likely to engage in one or more sexually oriented offenses in the future. Appellant admits the first prong of the test has been satisfied as he plead guilty to one count of rape in 1994. However, appellant argues the record does not contain clear and convincing evidence sufficient to support a finding under the second prong requiring the likelihood to engage in future sexually oriented offenses. We disagree.
{¶ 10} In determining whether a sexual offender is likely to commit future sexually oriented offenses, the trial court must consider all relevant factors, including those set forth in R.C.2950.09(B)(3). These factors include:
{¶ 11} "(a) The offender's or delinquent child's age;
{¶ 12} "(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
{¶ 13} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
{¶ 14} "(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
{¶ 15} "(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
{¶ 16} "(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;
{¶ 17} "(g) Any mental illness or mental disability of the offender or delinquent child;
{¶ 18} "(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
{¶ 19} "(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
{¶ 20} "(j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct."
{¶ 21} The trial court concluded in its September 25, 2003 Judgment Entry:
{¶ 22} "3) The Court finds that the State has proved the following elements of Ohio Revised Code Section 2950.09, by clear and convincing evidence:
{¶ 23} "(b) the offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses, to-wit: the Defendant was convicted in this Court of felony breaking and entering and theft, in Case No. 6722, and received two concurrent 6-month prison sentences on June 17, 1992; the events in this case occurred shortly thereafter, on August 18, 1993.
{¶ 24} "(f) if the offender previously had been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence disposed for the prior offense; . . . to-wit, the Defendant was convicted in this Court of felony breaking and entering and theft, in Case No. 6722, and received two concurrent 6-month prison sentences on June 17, 1992; the events in this case occurred shortly thereafter, on August 18, 1993. the Defendant would have been released from prison for the offenses in Case No. 6722 just a few months prior to committing the underlying offenses herein.
{¶ 25} "(j) as to any additional behavioral characteristics that contributed to offender's conduct, the Court notes the following additional factors were present:
{¶ 26} "I. Random Nature:
{¶ 27} "The victim was awakened while sleeping alone in her bed, in her home, by the Defendant burglarizing her bedroom, at approximately 3:00 a.m. The Defendant chose this victim's house to burglarize in random fashion because it was along the way of his path of travel, through back yards so officers would not arrest him for intoxication.
{¶ 28} "II. Violent Attack:
{¶ 29} "The evidence indicates that the Defendant, acting alone, violently raped the victim, after threatening her that he would kill her, again, in the bed of her own bedroom. The Defendant admitted hitting her on the head with a vase "five or six times," to cause her to be in fear of him prior to the rape.
{¶ 30} "III. Opportunity to Leave:
{¶ 31} "The evidence further shows that the Defendant, although startled by the victim waking up in the middle of his burglary of her bedroom, was free to leave, but chose to stay and brutally rape her;
{¶ 32} "IV. Single Sexual Incident:
{¶ 33} "The Defendant makes the argument that he does not qualify for Sexual Predator classification because this incident was out of character, a once in a lifetime error, and that he should not be classified as a Predator. While the Court agrees that his prior record does not contain other sexual crimes, that does not mean he is not a predator under the statute. This Court finds that there are two reasons for concluding this Defendant is a Sexual Predator. First is the violent and extreme nature of the attack, as noted above. Secondly, the Defendant had just been convicted of felony offenses, had been to prison and had been released a few months before this incident * * *.
{¶ 34} "4) In consideration of all the evidence, the Court hereby finds by clear and convincing evidence, that the Defendant is a Sexual Predator, as defined by Section 2950.01 et seq."
{¶ 35} The trial court relied upon appellant's prior criminal history and the violent acts demonstrated during the 1994 rape in declaring appellant a sexual predator. The trial court did not base its finding on the additional factors enumerated in the statute, nor do we find the additional factors particularly helpful in determining this case. If anything, they would seem to mitigate against a sexual predator finding.
{¶ 36} Captain Phil Vermillion testified at the sexual predator hearing as to appellant's prior history:
{¶ 37} "Q. Are you familiar with any kind of past criminal record that Mr. Thomas may or may not have had?
{¶ 38} "A. We have got — we have a history with him prior to that incident.
{¶ 39} "Q. And with that history, to the best of your recollection, has Rashawn Thomas ever been involved in anything involving violence or sexual misconduct, aside from these charges?
{¶ 40} "A. I'm not aware of any sexual misconduct. I believe there was a disorderly conduct charge prior to that.
{¶ 41} "Q. No other burglaries, no other charges of violence or sexual misbehavior?
{¶ 42} "A. There was a charge on his card of breaking and entering and auto theft?
{¶ 43} "Q. No other charges of violence or sexual misbehavior?
{¶ 44} "A. Not that I'm aware of."
{¶ 45} Tr. at 26.
{¶ 46} Appellant testified at the hearing, recounting the 1994 rape:
{¶ 47} "A. Well, when I went in the house, I was messing with the CDs and the stereo. And I was looking at the CDs, because there was a guy who had a music store, who was, more or less, a bootleg music store. He was selling CDs and stuff out of it. And we had got real cool with him, and he told us if we brought CDs up there, he'd buy them off of us. So that's the first thing that caught my eye. Seen those CDs. I'm like, cool. I'll take those CDs up to dude. He'll buy them. They had a cat in the house. I seen the cat move, and my eyes followed the cat. I was fixated on the cat. The cat is on the stairs and is looking at me. I just left everything alone. I was looking at the cat. The cat is easing back up the stairs, so I started following the cat. I followed the cat up the stairs, and the cat goes off into the bedroom. I see a TV light flashing off in there, so I know the TV is on. So I go up to the door. I look. I'm on all fours. I look in there. I see the TV is on. I see someone lying on the bed. She was nude. It was a lady laying in the nude. I see other bedrooms. So I'm like, well, go look into these other bedrooms, because might be somebody in there too. Wasn't nobody in the bedrooms. So I went back to the bedroom that Ms. Capen was laying in. And I'm looking at her, and looked like she watching TV, but she ain't moving. She's just laying there.
{¶ 48} "So I'm like cool. I see the jewelry chest. So I crawled around the bed to the jewelry chest, and I looked back, and she has got her eyes closed like she's asleep. So I opened the jewelry chest, and I see rings and necklaces. And I'm picking out necklaces and putting them in my hand and stuff. Seeing stuff that might be of value.
{¶ 49} "That's when I just felt like something move. So I went down real quick on the ground, and I'm sitting there for a minute, because I don't know if it was the cat or if it was her; she had woke up or something. So I was sitting there 25 for a minute.
{¶ 50} "And then I go to look up. And when I went to look up, she was looking over the bed. That's when I panicked. I jumped up. She grabbed the pillow. I jumped on top of her. Struggled. That's when I — she had a vase or something on her bed — on her mantle. I grabbed the vase. And she got her hands and legs, trying to kick me off.
{¶ 51} "I grabbed the pillow, trying to keep it over her head. I didn't want her to see me. I grabbed the vase and hit her in the head with it. She's kicking at me. That's when I started trying to get in between her legs. And she's saying no.
{¶ 52} "And then I hit her with the vase again. And I kept hitting her with the vase. I hit her with the vase about — I'm trying to think. Had to be about five or six times. Five or six times too many. Then she opened her legs, and I had sexual intercourse with her.
* * *
{¶ 53} "Q. Now you heard the testimony describing her description of getting the wedding ring off?
{¶ 54} "A. Yeah, I don't remember that either. I'm not denying that either. But I don't remember that either.
{¶ 55} "Q. Did you take her wedding ring?
{¶ 56} "A. I don't remember taking no ring off her finger. I took some jewelry out of the her jewelry chest, but I don't remember taking a ring off her finger."
{¶ 57} Tr. at 49-52.
{¶ 58} Notwithstanding appellant's account suggesting the rape was spontaneous in nature, we find the factors cited by the trial court in its September 25, 2003 Judgment Entry provide sufficient, competent evidence to support a finding appellant was a sexual predator.
{¶ 59} Appellant's sole assignment of error is overruled.
{¶ 60} The September 25, 2003 Judgment Entry designating appellant a sexual predator is affirmed.
Hoffman, J., Gwin, P.J. and Farmer, J. concur.